## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**ADRIAN FRANCIS WILLIAMS,**

    **Plaintiff,**

**vs.**                                    **Case No. 4:13cv298-MW/CAS**

**WARDEN RANDELL BRYANT, et al.,**

    **Defendants.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

The operative pleading in this case is the pro se Plaintiff's sixth amended complaint [hereinafter "complaint"].  Doc. 76.  Two motions to dismiss are pending. Docs. 83, 94.  The first motion to dismiss was filed by Defendants Bryant, Barfield, Cloud, Holland, Southwell, Southland, Smith, and Jones.  Doc. 83.   Defendants argue that Plaintiff failed to exhaust administrative remedies, that the complaint fails to assert a viable Eighth Amendment claim for the failure to protect Plaintiff from harm, and that Defendants are entitled to Eleventh Amendment immunity on all official capacity claims. Doc. 83. The second motion to dismiss, doc. 94, was filed by Defendant Gould who was belatedly served with process.  *See* docs. 84-85.  The second motion, doc. 94, "adopts and incorporates by reference" the arguments previously submitted in the first motion. Plaintiff has responded to the motions.  Docs. 87 and 98.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 at 556); see also Speaker v. U.S. Dep't of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 at 556). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the

---

[1] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), cert. denied, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

grounds upon which it rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992,

998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil

actions, with limited exceptions.").  Pro se complaints are held to less stringent

standards than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967

(11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30

L.Ed.2d 652 (1972)).  Nevertheless, a complaint must provide sufficient notice of the

claim and the grounds upon which it rests so that a "largely groundless claim" does not

proceed through discovery and "take up the time of a number of other people . . . ."

Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)

(quoted in Twombly, 127 S.Ct. at 1966).  The requirements of Rule 8 do "not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions."  Iqbal, 556

U.S. at 678-79, 129 S.Ct. at 1949.  A complaint does not need detailed factual

allegations to survive a motion to dismiss, but Rule 8 "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."  556 U.S. at 678, 129

S.Ct. at 1949.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

of the elements of a cause of action will not do.' "  Id. (quoting Twombly,  550 U.S., at

555, 127 S.Ct. 1955).

Courts should take a "two-pronged approach" when considering a motion to

dismiss under Rule 12(b)(6).  Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950.  The first

consideration is whether the complaint presents "well-pleaded factual allegations"which

are entitled to a presumption of truth or, whether, the complaint merely asserts "legal

conclusions" which "are not entitled to the assumption of truth."  Id. at 679, 129 S.Ct. at

1950.  If the complaint contains factual allegations that are well pled, the second step is

to consider whether the non-conclusory factual allegations "plausibly give rise to an entitlement to relief." *Id.* If so, a motion to dismiss should be denied. *Id.*, at 680, 129 S.Ct. at 1950-51 (citations omitted).

**Allegations of the Complaint**

Plaintiff alleges that in 2010, he was incarcerated at Jackson Correctional Institution. Doc. 76 at 6. However, after an incident with members of the Latin King gang in May 2011, Plaintiff was placed in protective management and transferred away from Jackson C.I. *Id.* Plaintiff was out of D.O.C. custody between November 2011 and January 2013. *Id.* When he returned to D.O.C. custody, he was returned to Jackson Correctional Institution on January 25, 2013. *Id.* at 7.

Plaintiff complained to Sergeant Southwell, the dormitory sergeant, that he previously had been transferred away from that institution, explaining the issue with protective management. Doc. 76 at 7. Sergeant Southwell then addressed the matter with Assistant Warden Cloud. *Id.* Plaintiff alleges that Warden Cloud directed that if Plaintiff "didn't want to return" to Jackson C.I.'s compound, Plaintiff should be locked up and sprayed for disobeying a verbal order. *Id.* Plaintiff contends Defendants Southwell and Cloud placed him in "known danger on January 25, 2013." *Id.* Plaintiff was assigned to C-Dorm, Bunk 1-120.

Plaintiff complains that he began receiving "constant threats from gang members." Doc. 76 at 7. Plaintiff also stated that on January 26, 2013, while on the "rec-yard," Plaintiff was surrounded by three Latin King gang members, one of whom Plaintiff recognized from the 2011 incident. *Id.* at 8. They asked Plaintiff why he got their gang placed under investigation in 2011 and threatened him, saying "they would

get him later." *Id.*  Plaintiff alleges that when he reported the incident to the officer on the rec-yard, he "laughed as if the plaintiff" were joking.  *Id.*  Plaintiff then reported the incident to Captain Jones, who advised there "was no way" Plaintiff had been transferred to resolve a protective management issue with gang members.  *Id.*  Captain Jones then told Plaintiff to get back to his dormitory before he was locked up and sprayed "for lying to staff."  *Id.*

Approximately a week later, one of the three gang members who surrounded Plaintiff on the rec-yard was moved into Plaintiff's dormitory by Sergeant Southwell. Doc. 76 at 9.  Plaintiff asserts that the move was made despite Plaintiff having explained in detail about the threatened harm to Plaintiff from Latin King gang members. *Id.*  Plaintiff found out the name of the inmate moved was Hector Campos, and he was assigned to the place "right next to the plaintiff's bunk."  *Id.*  Plaintiff requested to speak with the Warden and was sent to the Captain's office.  *Id.*  When he arrived, he explained the situation to Assistant Wardens Cloud and Barfield,[2] but Plaintiff alleges they refused to believe what Plaintiff was saying was true.  *Id.*  They told Plaintiff that classification would not make such an error and Plaintiff asserts he was again forced to remain on the compound.  *Id.*  Plaintiff further states that although he requested to speak with the Warden about this issue "many times," he never responded back to Plaintiff's requests.  *Id.*  Plaintiff alleges that he was "so afraid of being hurt" that he drank coffee constantly to force himself to stay awake.  Doc. 76 at 10.

---

[2] Plaintiff spelled the name of this Defendant is Barifield, but the motion to dismiss demonstrates this Defendant's name is John Barfield.  *See* doc. 83 at 1. Additionally, Plaintiff refers to "Warden Randell" in the complaint, doc. 76 at 11, but it appears that his proper name is Randall Bryant.  Doc. 83 at 1.

Plaintiff alleges that on February 14, 2013, he fell asleep because he was exhausted from trying to stay awake.  Doc. 76 at 10.  In the early morning hours of February 15, 2013, Plaintiff awoke to find Hector Campos cutting him with a razor blade on the right side of his face.  *Id.*  Inmate Campos told Plaintiff he was lucky the razor was not sharp or he would have killed Plaintiff.  *Id.*  When Inmate Campos went to the restroom area, Plaintiff went to the officer's station in his dormitory for help and found Officer Smith asleep.  *Id.*  Plaintiff knocked on the window to awaken Officer Smith, who then called for assistance.  *Id.*

Captain Folsom and two nurses (not Defendants in this case) arrived to conduct an investigation and take Plaintiff to medical treatment.  *Id.* at 10-11.  After being discharged from medical, Plaintiff was again placed in protective management status and placed in Y-Dorm confinement.  *Id.* at 11.  Plaintiff alleges that between February 21, 2013, and February 22, 2013, Captain Jones and Assistant Warden Cloud sprayed chemical agents into Plaintiff's cell six times because Plaintiff had written grievances complaining that he was not supposed to be housed at Jackson Correctional Institution and because someone told them that Plaintiff "planned to file" a lawsuit against them. *Id.*

Plaintiff contends that Heath Holland, head of Classification at Jackson Correctional Institution, failed "to provide a safe classification system at Jackson C.I." *Id.* at 11.  Plaintiff asserts that the Warden, Randall Bryant, and Assistant Wardens Cloud and Barfield, along with Sergeant Southwell, Captain Jones, and Officer Smith also failed to protect Plaintiff's safety.  *Id.*  Plaintiff also alleges that Defendant Robert Gould was the person responsible for his transfer back to Jackson C.I. and "failed to

check the Plaintiff's D.O.C. file to see that this issue existed . . . ."  *Id.* at 12.  Plaintiff

claims that Defendant Chris Southland is liable for "failing to ensure" the Classification

Board operated safely and had safety procedures in place to protect inmates from

known danger.  *Id.*  Plaintiff contends all Defendants were deliberately indifferent to his

right to be free from cruel and unusual punishment as guaranteed by the Eighth and

Fourteenth Amendments.  *Id.* 12-13.

Plaintiff advises that he was eventually transferred away from Jackson C.I.  *Id.* at

14.  However, Plaintiff contends that during that process, Assistant Warden Cloud told

Plaintiff he did not care if Plaintiff got killed and would "make sure that Hector Campos,

and his Latin King brothers, [would] bump heads with the Plaintiff while in D.O.C.

custody" so Plaintiff would be harmed.  *Id.*

As relief, Plaintiff seeks compensatory damages, punitive damages, declaratory

relief, and injunctive relief  *Id.* at 13-15.  Plaintiff requests that "D.O.C. ever again place

him in known danger."  *Id.* at 15.

**Grounds for Dismissal**[3]

Defendants contend that Plaintiff failed to exhaust administrative remedies.  Doc.

83 at 5-10.  In particular, Defendants contend Plaintiff submitted only one grievance

during the relevant time frame prior to filing this lawsuit and that grievance concerned

lost property which is unrelated to the events in this case.  *Id.* at 8-9.  In addition,

Defendants assert that Plaintiff "filed no appeals during the year 2013 regarding Latin

Gang members . . . contrary to Plaintiff's allegations" in the complaint.  *Id.* at 9.

---

[3] Because Defendant Gould adopts the motion to dismiss filed by the other
Defendants, *see* doc. 94, all arguments are considered together as having been raised
by all Defendants.

Defendants advise that Plaintiff submitted one "inmate request" to be placed in protective management, but advise that he did not file any "grievances."  *Id.* Defendants Holland, Gould, Southerland, and Smith also contend that Plaintiff did not allege sufficient facts to demonstrate an Eighth Amendment claim.  *Id.* at 10-13.  Finally, Defendants assert their entitlement to Eleventh Amount immunity to the degree Plaintiff brings suit against them in their official capacities.  *Id.* at 14.

## A.   Exhaustion

When the Prison Litigation Reform Act was enacted, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The exhaustion requirement of § 1997e(a) is mandatory and there is no discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing.  Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998); *see also* Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").

The Court may not consider the adequacy or futility of administrative remedies, but only the availability of such.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (citing Alexander, 159 F.3d at 1323); Booth v. Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001) (concluding that prisoner must complete the

prison administrative process if it could provide some sort of relief on the complaint even though no money could be given administratively).   "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007).[4]  "Congress intended to afford prison officials time to address grievances internally before allowing a prisoner to initiate a federal lawsuit."  Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (citing Porter, 534 U.S. at 525, 122 S.Ct. at 988).

A prisoner must also comply with the process set forth and established by the grievance procedures.  See Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).  In other words, not only must a prisoner exhaust a claim under § 1997e(a), the "PLRA exhaustion requirement requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements).

Exhaustion is an affirmative defense that is properly raised in a motion to dismiss.  Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008); Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008); Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").  Factual disputes concerning the

---

[4] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances.").

exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1373-74, 1376. Here, Plaintiff was advised that he "must come forward with evidence demonstrating exhaustion of administrative remedies." Doc. 86 at 2, n.1.

**Exhaustion Process**

Plaintiff is housed within the Florida Department of Corrections which has an administrative grievance program, FLA. ADMIN. CODE R. 33-103. As relevant to the issues raised in this case,[5] the grievance program consists of a three-step grievance process: the filing of an informal grievance, a formal grievance, and then a grievance appeal. FLA. ADMIN. CODE R. 33-103.011. Pursuant to the Department's rules, an inmate must submit an informal grievance "within 20 days of when the incident or action being grievance occurred . . . ." FLA. ADMIN. CODE R. 33-103.011(1)(a). "Following the initial receipt of an informal grievance, a written response shall be completed within 10 calendar days." FLA. ADMIN. CODE R. 33-103.011(3)(a).

---

[5] Certain types of issues may be raised at the formal grievance level, bypassing the informal grievance process. FLA. ADMIN. CODE R. 33-103.005(1) (2012). Those include grievances of an emergency nature, a grievance of reprisal or alleging violations of the Americans with Disabilities Act, medical grievances, grievances involving gain time or challenging placement in close management or subsequent reviews, grievances regarding the return of incoming mail, and grievances regarding disciplinary action. Id. Additionally, the following issues may be raised directly with the Office of the Secretary, bypassing both the informal and formal grievance level: allegation of a violation of the Health Insurance Portability and Accountability Act (HIPAA), a grievance of emergency nature, grievance of reprisal, protective management, admissible reading material, sentence structure issues (release date calculations), and inmate banking issues. Id. As will be explained in greater detail within this Report and Recommendation, Plaintiff's issues in this case do not fall within those categories. See doc. 76 at 15.

If the issue is not resolved, an inmate may file a formal grievance which "must be received no later than 15 calendar days from the date on which the informal grievance was responded to."  FLA. ADMIN. CODE R. 33-103.011(1)(b).  The rules require the inmate to attach the informal grievance with its response to the formal grievance.  FLA. ADMIN. CODE R. 33-103.006(2)(g).  Prison officials then "have up to 20 calendar days from the date of receipt of the grievance to take action and respond."  FLA. ADMIN. CODE R. 33-103.011(3)(b).

Thereafter, if the issue is still not satisfactorily resolved, the inmate may file an appeal to the Office of the Secretary.  FLA. ADMIN. CODE R. 33-103.011(1)(c).  The appeal must "be received within 15 calendar days from the date the response to the formal grievance is returned to the inmate."  *Id.*  The grievance appeal shall be "responded to within 30 calendar days from the date of the receipt of the grievance."  FLA. ADMIN. CODE R. 33-103.011(3)(c).  Similar to the requirements for submitting a formal grievance, an inmate must attach copies of his formal grievance and its response to the grievance appeal.  FLA. ADMIN. CODE R. 33-103.007(5)(a); *see also* doc. 83 at 7-8.

Plaintiff initiated this case on May 17, 2013.  Doc. 1.  Accordingly, Plaintiff must have exhausted administrative remedies prior to that date.

Prior to review of the relevant evidence, two arguments should be addressed at the outset.  Plaintiff has argued that "the exhaustion requirement does not apply to [Plaintiff] because this is a case where the plaintiff was transfered [sic] away from Jackson C.I. to resolve a protective mangement [sic] issue . . . ."  Doc. 87 at 2.  The law is well established that "the PLRA's exhaustion requirement applies to all inmate suits

about prison life, whether they involve general circumstances or particular episodes . . .

." <u>Porter</u>, 534 U.S. at 532, 122 S.Ct. at 992 (quoted in <u>Gould v. Owens</u>, 383 F. App'x

863, 867-68 (11th Cir. 2010) (holding that prisoner's "allegations of abuse related to

'prison conditions,' and the Prison Litigation Reform Act (PLRA) required him to exhaust

his administrative remedies before filing suit.")).  If administrative remedies are

available, they must be exhausted.  <u>Gould</u>, 383 F. App'x at 869 (citing <u>Porter</u>, 534 U.S.

at 524, and <u>Booth</u>, 532 U.S. at 741); <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084 (11th Cir.

2008) (stating that "[a] remedy has to be available before it must be exhausted, and to

be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'

") (quoting <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1322–23 (11th Cir. 2007) (internal

quotation marks and citation omitted))).

Plaintiff's argument is construed to assert that administrative remedies were

unavailable because Plaintiff was transferred from Jackson Correctional Institution to

Franklin Correctional Institution.  Plaintiff alleged that the events at issue took place just

after his return to Jackson C.I. on January 25, 2013, culminating in the alleged assault

by inmate Campos in the early morning hours of February 15, 2013.  Doc. 76 at 6-10.  It

appears from the Report of Protective Management, doc. 87 at 30, that Plaintiff was still

housed at Jackson Correctional Institution on March 12, 2013.  Furthermore, Plaintiff

submitted an informal grievance on March 10, 2013, which was responded to and

returned to him on March 19, 2013, at Jackson C.I.  *See* doc. 87 at 31-32.

The rules require inmates to submit an informal grievance "within 20 days of

when the incident or action being grievance occurred . . . ."  FLA. ADMIN. CODE R. 33-

103.011(1)(a).  That means Plaintiff had until March 7, 2013, to file an informal

grievance complaining about the failure to protect him from harm which resulted in his being attacked by inmate Campos.  Plaintiff had not been transferred away from Jackson C.I. by that date.  Accordingly, it is concluded that the grievance process was not unavailable to Plaintiff.

The second argument that Plaintiff raised in his response was that the Department of Corrections fraudulently claims "they never got the document . . ."  Doc. 76 at 2.  Plaintiff has not pointed to any grievance which he contends he submitted but was lost or never received.  That argument is unsupported and should also be rejected.

Defendants submitted a copy of an inmate request which was submitted by Plaintiff on February 15, 2013.  Doc. 83, Ex. D (doc. 83-4).  Plaintiff complained that he arrived at Jackson C.I. approximately two weeks ago and explained that he had previously been threatened by Latin King gang members in 2011.  *Id.*  Plaintiff said Hector Compos had been with those gang members on the compound and Plaintiff believed he had something to do with Plaintiff being cut in the face.  *Id.*  Defendants do not indicate what response was given to Plaintiff concerning that inmate request, but it is concluded that an "inmate request" is not part of the three-step grievance procedures.  Thus, that document does not demonstrate exhaustion.

Defendants also submitted a printout of the grievance log system showing all grievances received from Plaintiff during the relevant time frame.  Doc. 83, Ex. 1 (Doc. 83-1).  Plaintiff submitted one grievance appeal while housed at Franklin Correctional Institution.  *Id.*  That appeal was received on April 17, 2013, and was returned without action because Plaintiff had either not submitted an appeal at the institutional level first, or he failed to provide the Bureau of Inmate Grievance Appeals with a copy of the

grievance.  Doc. 83, Ex. B-1 (doc. 83-2 at 1).  Notably, that grievance contains a

checkmark at the top indicating Plaintiff intended to send it to the Secretary as an

appeal.  *Id.* at 2.  Plaintiff complained that when he was previously sent from Gulf

Correctional Institution to outside court, he had to leave his property.  Plaintiff

complained that he had not received all of his property back yet and needed his legal

documents.  *Id.*  Notably, Plaintiff complained that in January 2013, he was "sent from

Jackson C.I. to Franklin C.I." and was "never returned to Gulf C.I. where [his] property

[was] stored."  *Id.*  That grievance does not demonstrate exhaustion because it is

unrelated to the events at issue in this case.

Plaintiff's next grievance appeal was received on October 22, 2013, well after the

events at issue here, and complained that dirty dishes were being used to serve food

and beverages.  *Id.* at 3-4.  That is not relevant to the claims of this case, nor were the

other grievance appeals submitted thereafter.  *Id.* at 5-12.  Plaintiff did not file a

grievance appeal to the Office of the Secretary concerning his fear for his safety at

Jackson C.I. or the attack against him.  Doc. 83, Ex. C (doc. 83-3); *see also* doc. 89.[6]

Plaintiff has submitted a copy of an informal grievance which he submitted to the

Warden on March 10, 2013.  Doc. 87 at 31.  Plaintiff complained that when he had been

housed at Jackson Correctional Institution in 2011, "Latin King gang members pulled" a

knife on Plaintiff in the canteen line and threatened to kill him.  *Id.*  Plaintiff said his

protective management was resolved by a decision to transfer Plaintiff.  *Id.*  Plaintiff

explained that he had just recently been transferred back to Jackson C.I. in January

---

[6] Defendants initially submitted an unsigned copy of an Shirley Johnson's declaration.  Doc. 83, Ex. C.  Defendants submitted a signed copy of the declaration on January 16, 2015, which was filed as document 89.

2013, and said as soon as he arrived, he started receiving "threats from some of the same gang members . . . ."  *Id.*  Plaintiff reported that on February 15, 2013, "one of the gang members cut [him] in the face with a razor" in his dormitory.  *Id.*  Plaintiff said that he was "never supposed to return back to Jackson C.I." and prayed that he would be moved to another institution.  *Id.* at 32.  Plaintiff said that if they would look into his complaint, they would see he was "telling the truth."  *Id.*  Plaintiff claimed his life was in danger at Jackson C.I. and said it should be documented in his file.  *Id.*  A response was provided to Plaintiff that he was "approved" for a transfer.  *Id.* at 31.

Plaintiff also submitted a copy of a grievance which was dated August 22, 2013.  Doc. 87 at 37.  At the top of the grievance, Plaintiff checked the box indicating the grievance was directed to the Office of the Secretary, suggesting it was a grievance appeal.  *Id.*  Plaintiff complains in his response that he intended that document to go to the Secretary, but the Department of Corrections improperly transferred it to the institution to be answered by Assistant Warden Brown.  *See* doc. 87 at 13.  Plaintiff contends this shows that "games can be played with the grievance system, and are being played."  *Id.* (citing to Plaintiff's Exhibit C, doc. 87 at 37).

The grievance contains a log number at the top of the first page, but then a notation at the bottom of that page which states: "Forward to Brown Reply by 9/9/13."  Plaintiff's Ex. C (doc. 87 at 37).  A stamp at the bottom of the page also indicates it was received by the "Asst. Warden of Programs" on August 30, 2013.  *Id.*  The response to that grievance is provided by Assistant Warden W. Brown from Franklin Correctional Institution.  *Id.* at 38.  Although Plaintiff contends that the Department improperly sent the document to the institution, that argument is rejected.  The rules require an appeal

to be filed *after* the submission of a formal grievance.  There is no evidence that Plaintiff filed a formal grievance at the institutional level.  Thus, by forwarding the grievance to the institution, Plaintiff's grievance was responded to on the merits.  The alternative which was available to prison officials was to return Plaintiff's grievance appeal without a response for failing to first submit a formal grievance at the institution or failing to attach that grievance to his appeal.[7]  Plaintiff received a benefit in that his grievance was responded to on the merits.

Plaintiff complained in that grievance that he had been improperly transferred to Jackson Correctional Institution, that his life was in danger from the Latin King gang members, and he was subsequently attacked and injured.  *Id.*  Plaintiff said he had only been moved "right down the street" from Jackson C.I. to Franklin C.I.  *Id.*  Plaintiff requested that he be "moved out of Region #1 because" it was not safe for him.  *Id.*  Plaintiff said that all he saw were inmates coming to Franklin C.I. from Jackson C.I.  *Id.*  The response to that grievance advised that Plaintiff had been transferred to resolve his "need for protection."  *Id.* at 38.  The response noted that after an investigation was made into his request for protection, Plaintiff's claim was deemed to be valid and his "transfer was initiated."  *Id.*  at 38.  The response stated that if he met other inmates who have been housed with him previously and he felt his life was in danger, he could "always request protection" again.  *Id.*  Plaintiff's grievance was denied and Plaintiff was advised he would "obtain further administrative review of [his] complaint" by filing an

---

[7] That did happen with Plaintiff's April 17, 2013, attempted grievance appeal concerning the loss of his property.  *See* doc. 83-2 at 1-2.

appeal to the Bureau of Inmate Grievance Appeals.[8]  *Id.*  There is no evidence on this

record that Plaintiff filed a grievance appeal to the denial of that formal grievance.

so.  Moreover, that document would still be insufficient to demonstrate exhaustion

because Plaintiff submitted the grievance on August 22, 2013.  Doc. 87 at 37.  Because

this case was initiated on May 17, 2013, all grievances to demonstrate exhaustion must

have been filed *prior* to May 2013.  Accordingly, that document does not demonstrate

exhaustion.

The issue here is whether the informal grievance which was dated March 10,

2013, should be considered exhaustion.  Doc. 87 at 31.  The grievance raised two

issues which are presented in this litigation.  The first issue is that Plaintiff should not

have been returned to Jackson Correctional Institution and he received threats from

same gang members as soon as he arrived.  The second issue is that Plaintiff was

attacked on February 15, 2013, and he requested that he be moved to another

institution.  The response provided to Plaintiff stated he was "approved" for a transfer.

Accordingly, that informal grievance must be considered to have been approved.

The Department's rules provide that if the issue is not resolved, an inmate may

file a formal grievance which "must be received no later than 15 calendar days from the

date on which the informal grievance was responded to."  FLA. ADMIN. CODE R. 33-

103.011(1)(b).  Because Plaintiff's grievance was approved, it would seem that

Plaintiff's issue was satisfactorily resolved and he was not required to file anything

further.  In this posture, Plaintiff's claims against Defendants Gould and Southland, that

_____

[8] The statement advising Plaintiff how to obtain further administrative review also confirms that Plaintiff's August 2013 grievance was not an appeal, but only the second step of the grievance process.

he should not have been sent to Jackson Correctional Institution, are considered on the merits below.  Doc. 76 at 12.  However, all other claims should be dismissed for failure to exhaust administrative remedies.  Plaintiff did not submit any grievances which raised complaints against the other Defendants for failing to protect him, or that any Defendants used chemical agents against him as a retaliatory measure.

## B.    Failure to State a Claim

Defendants assert that Plaintiff's complaint fails to state a claim against Defendants Gould[9] or Southerland.  Doc. 83 at 10-13.  The basis for these claims is that Defendants improperly directed Plaintiff's returned to Jackson Correctional Institution in January of 2013.  Plaintiff alleged Defendant Gould "failed to check the Plaintiff's D.O.C. file to" ensure compliance with safety procedures.  Doc. 76 at 12.  Plaintiff contends that because Defendant Gould did not ensure his transfer was in compliance with safety procedures, he was transferred "into the hands of known danger and harmed."  *Id.*

The basis for Plaintiff's claim against Defendant Southerland, the Regional Director for Region One, was that this Defendant failed "to make sure that D.O.C. Classification board for Region One was running safely and in compliance with safety procedures and also that every transfer was investigated before it was approved so no one would be placed in harms way or known danger . . . ."  Doc. 76 at 12.

The Eighth Amendment "imposes upon prison officials the duty to 'provide humane conditions of confinement.' "  Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994).  Prison officials are required to "ensure that

_____

[9] Defendant Gould was alleged to be the classification supervisor who approved or was otherwise responsible for Plaintiff's transfer.

inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' " Farmer, 511 U.S. at 832, 114 S. Ct. at 1976 (quoting Hudson v. Palmer, 468 U.S. 517, 526- 527, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984)).  In guaranteeing their safety, officials must "protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833, 114 S. Ct. at 1976-1977 (citing Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir.), cert. denied 488 U.S. 823 (1988)).  However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834, 114 S. Ct. at 1977.

To prevail on an Eighth Amendment failure-to-protect claim, an inmate must make two showings.  First, he must demonstrate that he was "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834, 114 S. Ct. at 1977 (citing Helling v. McKinney, 509 U.S. 25, 35, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993)).  Second, he must show that the defendant prison official had a "culpable state of mind" (be deliberately indifferent) in that he knew of and disregarded "an excessive risk to inmate health or safety."  511 U.S. at 834, 837, 114 S. Ct. at 1977, 1979.  In other words, the Defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. at 1979.

The "deliberate indifference" standard "entails something more than mere negligence," but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. at 835, 114 S. Ct.

at 1978.  In addition, the Court explicitly rejected the invitation to utilize a completely objective test, requiring an "inquiry into a prison official's state of mind."  *Id.* at 837-38, 114 S. Ct. at 1979.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Id.*  "Merely negligent failure to protect an inmate from attack does not justify liability under [§] 1983."  Goodman v. Kimbrough, 718 F.3d 1325, 1332 (11th Cir. 2013) (quoting Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir.1990) (per curiam)).  It must be acknowledge that "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' "  Farmer, 511 U.S. at 837, 114 S. Ct. at 1979.

Defendants argue that Plaintiff's allegations against them amount to negligence only.  Doc. 83 at 13.  Plaintiff does not allege any facts showing that either Defendant Gould or Southerland were aware of a risk of harm to Plaintiff at Jackson Correctional Institution generally, such that it was deliberate indifference to house Plaintiff there. Plaintiff only alleged that they failed to comply with safety precautions.  *See* also doc. 98 at 8.

A claim that a Defendant did not comply with departmental rules is insufficient to form the basis of a constitutional claim.  Plaintiff has not alleged any facts which support finding that either Defendant Gould or Southerland had a culpable state of mind.  The failure to check Plaintiff's inmate file is not sufficient to form the basis of an Eighth Amendment claim.  Plaintiff has not presented any additional facts which would support

finding that these Defendants were deliberately indifferent to a risk of harm to Plaintiff.[10] Docs. 87, 98.  Thus, the motion to dismiss those claims should be granted.

**Conclusion**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motions to dismiss, docs. 83 and 94, be **GRANTED** and Plaintiff's sixth amended complaint, doc. 76, be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2) as to the claims against Gould and Southerland, and failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e) as to all other Defendants, and that the Order adopting this Report and Recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Tallahassee, Florida, on August 18, 2015.


 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

---

[10] It has not been shown that Plaintiff's original protection in 2011 was to be removed from Jackson Correctional Institution as opposed to separated from inmate Alain Terazon.  *See* doc. 87 at 30.